Matter of Gilliam (2020 NY Slip Op 02030)





Matter of Gilliam


2020 NY Slip Op 02030


Decided on March 25, 2020


Appellate Division, Second Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 25, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
SHERI S. ROMAN, JJ.


2017-00590

[*1]In the Matter of Harriet A. Gilliam, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Harriet A. Gilliam, respondent. (Attorney Registration No. 2154516)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on October 30, 1985. The Grievance Committee commenced a disciplinary proceeding pursuant to 22 NYCRR 1240.8 against the respondent by the service and filing of a notice of petition dated January 11, 2017, and a verified petition dated January 4, 2017, and the respondent served and filed a verified answer dated February 10, 2017. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated March 31, 2017, pursuant to 22 NYCRR 1240.8(a)(2), and the respondent served and filed a response dated April 15, 2017. By decision and order on application of this Court dated May 9, 2017, the matter was referred to John P. Clarke, as Special Referee, to hear and report.



Catherine A. Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for petitioner.
Long Tuminello, LLP, Bay Shore, NY (Michelle Aulivola of counsel), for respondent.



PER CURIAM


OPINION & ORDER
. The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated January 4, 2017, containing three charges of professional misconduct. Following a pre-hearing conference on July 20, 2017, September 13, 2017, and July 11, 2018, and a hearing on December 13, 2018, and January 7, 2019, the Special Referee sustained all the charges. The Grievance Committee now moves to confirm the Special Referee's report and impose such discipline upon the respondent as the Court deems just and proper. The respondent cross-moves to disaffirm the report in its entirety; however, in the event the Court denies the cross motion, she asks that in view of the mitigation presented, a sanction, if any, be limited to a public censure.
Charge one alleges that the respondent improperly entered into a business transaction with a client, in violation of rule 1.8(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
On or about January 13, 2013, the respondent met with Kristine Drewes (hereinafter Drewes) at the respondent's law office, located in Riverhead, to discuss the probate of the estate of Drewes's late husband, Peter Drewes. Peter Drewes died on September 25, 2012. The respondent first met Drewes in or about 1997, when Peter Drewes retained the respondent regarding an employment matter. Since 1997, the respondent had little or no contact with Drewes, until their [*2]January 13, 2013, meeting. During their January 13, 2013, meeting, the respondent learned that Drewes had received approximately $300,000 in life insurance proceeds from a policy Peter Drewes had carried on her behalf.
During the January 13, 2013, meeting, the respondent told Drewes she needed $35,000 to save the Northeast Christian Bookstore (hereinafter the bookstore) from foreclosure. The respondent and her sister, Mary Gilliam, are the sole shareholders of Goodness and Mercy, Inc. (hereinafter Goodness and Mercy), which owns the bookstore. Home Loan Investment Bank had obtained a judgment of foreclosure against Goodness and Mercy, however, Goodness and Mercy filed for bankruptcy in an attempt to permit the bookstore to continue operating and avoid foreclosure. Drewes agreed to lend the respondent the $35,000. On or about January 14, 2013, the respondent received from Drewes a bank check for $35,000, payable to "Harriet Gilliam." At the time the respondent received the $35,000 from Drewes, she had neither discussed with Drewes the terms of the loan, nor had she memorialized in writing the terms or the existence of the loan. On or about March 11, 2013, the respondent filed a petition for probate for the estate of Peter Drewes with the Suffolk County Surrogate's Court.
In or about March 2013, the respondent told Drewes she needed an additional $65,000 to save the bookstore from foreclosure. Drewes agreed to lend the respondent the $65,000. On or about March 14, 2013, the respondent received from Drewes a bank check for $65,000, payable to "Harriet Gilliam." At the time the respondent received the $65,000 from Drewes, she had neither discussed with Drewes the terms of the loan, nor had she memorialized in writing the terms or the existence of the loan.
Within two weeks of her receipt of the $65,000 bank check, the respondent told Drewes she needed an additional $50,000 to save the bookstore from foreclosure. Drewes agreed to lend the respondent the $50,000. On or about March 27, 2013, the respondent received from Drewes a bank check for $50,000, payable to "Mary Gilliam." At the time the respondent received the $50,000 from Drewes, she still had not discussed with Drewes the terms of the loans, now totaling $150,000, nor had she memorialized in writing the terms or the existence of the loans.
On or about May 9, 2013, letters testamentary were issued to Drewes in connection with the estate of Peter Drewes. Thereafter the respondent continued to assist Drewes with issues involving the estate.
In or about May 2013, the respondent told Drewes she needed an additional $20,000 to save the bookstore from foreclosure. Drewes agreed to lend the respondent the $20,000. On or about May 31, 2013, the respondent received from Drewes a bank check for $20,000, payable to "Mary Gilliam." In or about August 2013, the respondent told Drewes she needed an additional $35,000 to save the bookstore from foreclosure. Drewes agreed to lend the respondent the $35,000. On or about August 23, 2013, the respondent received from Drewes a bank check for $35,000, payable to "Mary Gilliam."
In or about October 2013, the respondent told Drewes she needed an additional $7,500 to save the bookstore from foreclosure. Drewes agreed to lend the respondent the $7,500. On or about October 19, 2013, the respondent received from Drewes a bank check for $7,500, payable to "Mary Gilliam." At the time the respondent received these additional funds from Drewes, she did not discuss with Drewes the terms of the loans, now totalling $212,500, nor did she memorialize in writing the terms or the existence of the loans.
At no time between January 2013 and October 2013, did the respondent advise Drewes of the desirability of seeking the advice of independent counsel regarding the loans. Drewes requested a writing from the respondent memorializing the loans totaling $212,500. Despite Drewes's request, the respondent failed to memorialize in writing the terms or existence of the loans totaling $212,500. Drewes asked the respondent to execute a document she prepared acknowledging the loans totaling $212,500. The respondent declined to execute the document Drewes presented to her. To date, the respondent has paid Drewes $500 toward repayment of the $212,500 loaned.
Charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of rule 8.4(c) of the Rules of Professional Conduct (22 NYCRR 1200.0), based on factual specifications alleged in charge one, and in addition to the following: The respondent induced Drewes to lend her money to save the bookstore from foreclosure by telling and advising Drewes she would be repaid within two years. The respondent induced Drewes to lend her money to save the bookstore from foreclosure by telling and advising Drewes she would be repaid from the expected proceeds of a medical malpractice case the [*3]respondent was handling on behalf of a plaintiff. Upon information and belief, the respondent had no such medical malpractice case pending. The respondent induced Drewes to lend her money to save the bookstore from foreclosure by leading Drewes to believe the respondent would be selling the bookstore for an amount far in excess of the amount owed the bank. Upon information and belief, at all relevant times, the bookstore was not listed for sale with any real estate agency or business broker, or otherwise advertised for sale.
The respondent induced Drewes to lend her money by telling Drewes that "the Lord had chosen" Drewes to save the bookstore from foreclosure and would make it possible for the respondent to repay the loans. Upon information and belief, it was the respondent who had chosen Drewes to lend a total of $212,500 to save the bookstore from foreclosure. The loans were made without the respondent discussing the terms of the loans with Drewes, memorializing the terms or the existence of the loans in writing, or referring Drewes to independent counsel for advice. The respondent induced, coerced, and pressured Drewes to continue to lend her money to save the bookstore from foreclosure by telling Drewes that if the bank's demands for more money were not met, all previous amounts Drewes had loaned would be lost. The respondent instructed Drewes to make the loan checks payable to the respondent or the respondent's sister, Mary Gilliam, to induce the bank to believe that the respondent and Mary Gilliam had assets available to contribute to Goodness and Mercy's obligations.
Charge three alleges the the respondent engaged in conduct that adversely reflects on her fitness as an attorney, in violation of rule 8.4(h) of the Rules of Professional Conduct (22 NYCRR 1200.0), as specified in charges one and two.
The respondent's defense to the charges rested on two main contentions: (1) that she was not retained by Drewes at their initial meeting on January 13, 2013; hence, there was no attorney-client relationship and, as a consequence, rule 1.8 is not implicated or applicable; and (2) that the money given to her by Drewes was a gift, not a loan.
Following a hearing, at which Drewes and the respondent both testified, the Special Referee rejected both contentions, finding that the money was a loan and that there was an attorney-client relationship from inception. The basis for the Special Referee's finding was that he found Drewes's testimony to be credible, whereas he did not find the respondent's testimony credible. In the words of the Special Referee, Drewes's story was "told simply, without guile and was a logical recitation of simple facts"; whereas the respondent's testimony was "carefully crafted to eliminate the key issues by denying any legal matters were discussed at [the January 13, 2013,] meeting and that the check[s] represented a loan." The Special Referee found it significant that, in her examination under oath, the respondent repeatedly referred to the monies as loans, and subsequently changed her testimony, insisting at the hearing that the checks were a donation or gift to the bookstore.
It is well-settled that in disciplinary proceedings, a Special Referee's findings on issues of credibility are entitled to great weight, since the Special Referee had the first-hand opportunity to judge and evaluate the testimony adduced (see Matter of Maggipinto, 125 AD3d 31; Matter of Lodes, 118 AD3d 54; see also Matter of Egger, 106 AD3d 77; Matter of Somers, 50 AD2d 396). We find no basis to disturb the Special Referee's findings, which were amply supported by the record. Contrary to the respondent's assertion that the Special Referee wrote only in "broad and sweeping generalizations," the Special Referee's findings were preceded and followed by a recitation of the facts as testified to by both Drewes and the respondent.
Based on the evidence adduced at the hearing, we agree with the Special Referee's determination to sustain the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted, and the respondent's cross motion to disaffirm the report is denied.
The respondent has prior disciplinary history consisting of three Admonitions. On February 13, 2002, the respondent was admonished for improper use of a trade name, improper sharing of legal fees with a non-lawyer, and forming a prohibited partnership with a non-lawyer. On October 7, 2009, the respondent was admonished for various escrow violations in connection with her IOLA account. On April 26, 2010, the respondent was admonished for her conduct in connection with her handling of two personal injury matters.
In mitigation, the respondent notes the following factors: the use of trust funds or conversion are not involved; she has made efforts to repay Drewes; the funds were utilized for the purpose for which they were given—to benefit a religious bookstore; there was no proof or evidence [*4]of dishonesty; there was no evidence of lack of remorse; the misconduct was limited in scope to a single series of gift transactions and did not involve other forms of misconduct; and the respondent's prior disciplinary history is unrelated to the type of misconduct charged in this proceeding. Finally, the respondent asks that the Court consider her years in public service, as a staff attorney with the U.S. Department of Labor and as in-house counsel for Suffolk County, the compelling character testimony presented, and her significant contributions to the community, such as her years of service as Riverhead Town Councilmember, and to her church as a licensed minister and elder in the First Baptist Church of Bay Shore.
While the respondent's public service and contributions to the community are noteworthy, the aggravating factors in this case overshadow any mitigation. The facts as disclosed reveal a scenario where the respondent, in need of funds for her business, took advantage of a vulnerable elderly client whose husband had just passed away. Drewes testified that she was extremely distraught and in mourning when she met with the respondent. Induced by misrepresentations made by the respondent that a sale was imminent or that it was "God's plan" for Drewes to help, Drewes kept issuing checks for fear that if she did not she would lose the money that she had already given. Although she was unaware that she was being victimized, even Drewes, at some point, realized that it would be prudent to obtain a written document to memorialize the amount of the loans, but the respondent refused. The respondent made no effort to repay Drewes until after she was contacted by an attorney representing Drewes, and even then the respondent has only repaid the paltry sum of $500. The respondent lacked candor and showed no remorse. As noted by the Special Referee, the respondent's sole assumption of responsibility was her statement, "Well in hindsight, I believe it might have been helpful to have a formal writing."
Under the totality of the circumstances, we find that a disbarment is warranted.
SCHEINKMAN P.J., MASTRO, RIVERA, DILLON and ROMAN, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted, and the respondent's cross motion to disaffirm the report is denied; and it is further,
ORDERED that the respondent, Harriet A. Gilliam, is disbarred, effective immediately, and her name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Harriet A. Gilliam, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Harriet A. Gilliam, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Harriet A. Gilliam, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court